THOMAS G. ATKINS *vs.* WILLIAM H. BORDMAN & others

The owner of two adjoining messuages, fronting on a street, conveyed one of them by a deed, in which, after stating that there was, on the south side of the messuage conveyed, a gate or passage way of about five feet wide, leading from the street into the yard thereof, reserved to himself, his heirs and assigns, free liberty of ingress, egress, &c. through and upon said gate or passage way, for carrying and recarrying wood, &c. through the same, and over the yard of the granted messuage into and from his own adjoining house and land. *Held,* that the width of the passage way was not definitely fixed by the deed, and that the reservation was of a right of a suitable and convenient passage for the purposes indicated. *Held also,* that although the grantor, and those claiming under him, had used the passage way long enough to gain a prescriptive title thereto, yet as it had been used in near conformity to the terms of the reservation, it must be deemed to have been enjoyed under the reservation, and not adversely thereto, and must be limited by the terms thereof.

The owner of land, over which his grantor has reserved a passage way, may lawfully cover such passage way with a building, if he leave a space so wide, high and light, that the way is substantially as convenient as before for the purposes for which it was reserved : And he *is* not liable for damages, although the passage way, by reason of its being so covered, becomes to a greater extent the resort of strangers, to the annoyance of the grantor.

Where the owner of two adjoining messuages conveys one of them, and it is agreed by him and his grantee that if the latter shall make " any addition of building " westwardly, he shall not extend it northwardly beyond a certain line, the grantee is not thereby restricted from raising his building higher, though by so doing he interrupts the access of light and air to the windows of the grantor's house·

TRESPASS upon the case. The plaintiff claimed damages for injuries caused by narrowing a certain passage way, and darkening the same by erecting a building over it, and thereby also interrupting the access of light and air to his adjoining messuage. In one of the counts, the plaintiff claimed a right to said passage way by prescription. In all the counts, it was averred that the defendants' ancestor erected the building, &c. by which the alleged injuries were caused, and the defendants were charged with a wrongful continuance of the cause of those injuries, after notice given and request made to them to remove it. The trial was before *Morton,* J. who reported the case in substance as follows :

The plaintiff and the defendants own contiguous estates in Boston, fronting east on Washington Street ; the plaintiff's estate lying north of that of the defendants. In 1703, both estates

were owned by Atherton Haugh, who in that year conveyed the estate, which is now the defendants', to Henry Tew, "bounded in the front or easterly end upon the Fore Street [now Washington Street] leading towards Roxbury, where it measures twenty one foot ; on the northerly side by other land and housing of the said Atherton Haugh ; in the rear or westerly end by land of James Meers, where it measures in breadth twenty eight foot and an half ; and on the southerly side by housing and land in the tenure and occupation of Sarah Robinson, on which side there is a gate and passage way of about five foot wide, leading from the said street, between the said Robinson's housing and land and the said messuage herein granted, into the yard of the said messuage : Reserving out of this bargain and sale, unto me the said Atherton Haugh, my heirs and assigns for ever, free liberty of ingress, egress and regress, through and upon the said gate or passage way, for carrying and recarrying wood, or any other thing, through the same, and over the yard or ground of the said messuage hereby granted, into and from the housing and land of me the said Atherton Haugh adjoining, for the use and accommodation thereof, without damnifying or annoying thereby the said Henry Tew, his heirs or assigns. And it is mutually agreed between the said parties, that whensoever the said Henry Tew, his heirs or assigns, are minded to make or add any addition of building backward, he or they shall only make the breadth equal with the breadth of the back of the chimneys of said tenement hereby granted."

In 1821, the defendants' ancestor erected two tenements on the rear of the estate now owned by them, and in 1823 took down the front building and erected a new one, the upper part of which he extended to the south line of his land, viz. to the north side of the building described as Sarah Robinson's in the aforesaid deed. The south wall of the lower story of this new building was placed near the site of the south wall of the old one. But a wall was made from the ground, on said south line of the land, and carried up the whole height of the building. From this wall to the south wall of the lower story, an arch was thrown, which covered the passage way, so far as the building extended westerly.

The new building was made higher than the old one, and t somewhat obstructed an attic window in the plaintiff's house, which overlooked the roof of the defendants' old front building.

The action was for damages caused by narrowing, covering and darkening the aforesaid passage way, and by obstructing said window.

It was in evidence, that there were anciently a gate and posts at the entrance of the passage way from Washington Street. The plaintiff's witnesses stated that the distance between these posts was five feet or more. Those of the defendants stated that it was about four feet. Some of the plaintiff's witnesses testified that in 1818, or subsequently, they had seen handcarts pass between these posts when they were both standing. And one witness, who took the measure of numerous handcarts in 1833, stated that the length of their axletrees varied from four feet and eight inches to five feet and one inch.

The plaintiff's witnesses stated that the passage way was materially injured by being arched over, by reason of the diminution of light, and by reason of its being thereby rendered a place of resort and a nuisance, and by the obstruction of the circulation of the air ; and that a passage way open above is generally preferred. The defendants' witnesses testified that it was more convenient by reason of being covered, because it was thereby protected from snow and rain ; and that it is the more general practice to cover passage ways of similar dimensions and use, and that covered passage ways of this sort are generally pre ferred.

There was also conflicting testimony as to the fact whether the passage way had been made a place of more frequent resort since 't was covered, and whether the value of an estate is materially diminished by reason of the approach to it being by a covered passage way, instead of one open above.

The jury were instructed, that the effect upon the general value of the plaintiff's estate was not to be taken into consideration, but merely the damage sustained by him during the time covered by the writ.

It was in evidence that the plaintiff's tenement, approached

by the passage way, is now, and for more than fifty years has been, occupied as a dwellinghouse, and that the rent thereof has been diminished ever since the erections made by the defendants' ancestor.

There was proof that the attic window in question looked southerly over the ridge of the defendants' old building that was taken down in 1823; so that if the defendants' ancestor had erected his new building on the foundation of the old one, and carried it up as high as the present one, it would have shut up this window. But the new building was placed two feet and eight or ten inches south of the foundation of the old one, and carried up so that the brick wall thereof is about thirty inches from the window. This brick wall was also carried up higher than said old building.

The jury were instructed that the defendants were bound to maintain a passage way of a breadth equal to the distance between the old gate posts, and that they were liable for damage, if the new passage way was rendered more inconvenient by being covered, by reason of its being made a place of resort, or being darkened, or otherwise; and that the defendants were liable for damage, if their wall materially and substantially obstructed the light of the plaintiff's attic window.

This was the fourth action brought by the plaintiff for damages to his passage way, &c. and the judgments in the three former actions were given in evidence, together with the notice given to the defendants by the plaintiff, and his request that the causes of his injuries might be removed. (The facts respecting those former actions are hereinafter stated by the chief justice, in the opinion of the court given by him.)

There was no evidence of any wanton and malicious obstruction by the defendants of the use of the passage way by the plaintiff and his tenants, except what appears in the foregoing facts.

The judge instructed the jury, that the claim for exemplary damages, in a case of this kind, was not to be favored; especially as the court have a power to order the nuisance to be abated, and would have done it in the former cases, if the

plaintiff had moved for it, and it had been shown to be a proper case for such an interference. But the jury were also instructed that they had a right to give vindictive damages, and if the defendants, instead of seeking to maintain and enjoy their own rights, had acted wantonly and maliciously towards the plaintiff, the jury would be justified in doing so.

The jury returned a verdict for the plaintiff for the sum of $ 717 ; viz. for narrowing the passage way, $ 332 ; for covering the same, $ 350 ; for darkening the window, $ 35. The defendants moved for a new trial on the following grounds.

1. Because the jury were instructed that the defendants were bound to maintain a passage way of a breadth equal to the distance between the old gate posts, instead of being instructed that it is enough to satisfy the reservation in the deed, if the new passage is equally convenient for the purposes for which the passage way was reserved, although it might not be so wide, through its whole extent, as the old gate-way.

2. On the ground that the damages were excessive.

3. Because the jury were instructed, that the defendants were liable, if the passage way is less convenient in consequence of its being arched, by reason of its being thus darkened, or being more exposed to be made a place of resort, or otherwise ; instead of the ground of damage on this account being confined to the darkening merely, and the direct effect, if any, in actually making obstructions in the space of the passage way as occupied and used for the purposes for which it was reserved in the deed.

4. Because the jury were instructed, that the defendants had not a right to arch over the passage way, in case it was rendered thereby substantially less convenient ; instead of being instructed that they had a right to arch it over, provided they eft sufficient unobstructed space for the uses and purposes for which it was reserved, without taking into consideration any other direct or indirect advantages or inconveniences resulting from the arch'ng.

5. Because the jury were not instructed that the defendants had a right to arch over the passage way, though the same might be somewhat darkened thereby, provided it was not arched and

covered so low as to obstruct passing and repassing, for the pur-
poses mentioned in the deed.

6. Because the jury were instructed, that if the light of the
window in the attic story was materially or substantially dimin
ished by the defendants' wall, they were liable for damage, in-
stead of being instructed that the reservations in the deed, on
the subject of light and air, excluded all prescriptions and other
reservations, and privileges of like description.

Verdict to be set aside and a new trial granted, if for any of
these causes the defendants are entitled to a new trial ; other-
wise, judgment to be rendered on the verdict.

S. Hubbard & W. Phillips, for the defendants.

Fletcher & Choate, for the plaintiff.

SHAW, C. J.   This cause, or rather several causes growing
out of the same subject of controversy, have long been before
the court ; and it is to be regretted that all points of dispute, in
regard to the relative rights of the parties, have not yet been ad-
justed.   Several questions have heretofore been decided, and
the parties have acquiesced in the decisions, and adjusted their
buildings in conformity with them.   20 Pick. 291.

The main question, which now remains for consideration, be-
tween these parties, is, whether the defendants had a right to
erect a building over the passage way which, it is conceded,
the plaintiff has a right to have, use and enjoy, on the southerly
side of the defendants' land.   It appears that heretofore both of
these tenements belonged to one person, and of course neither
estate was then subject to any easement for the benefit of the
other ; because the owner, as the exclusive proprietor, might
build upon any part, or use and appropriate any and every part
of the estate at his own pleasure, as his own sense of his inter-
est and convenience might dictate.   It is obvious, that so long
as two tenements remain the estate of the same owner, no right
of easement can be created by use, however long continued;
because such use cannot be adverse.   Whenever therefore such
proprietor conveys away part of the estate so situated, he may
create, annex, and convey with the estate granted, such rights of
way over his other estate retained, or other easements therein,

as he may think fit ; and also he may reserve out of the estate granted, and annex to his own estate retained, such easements as he may deem proper.   And the acceptance of the deed by the grantee, whilst it gives him the benefit of the easements granted, subjects the granted estate, both in his own hands, and in those of all others who may come in under him, to the easements re‑served.   It stands, therefore, upon the ground of convention, between those who have a disposing power.

There are cases, indeed, in which it is held, that long use may be given in evidence to establish the right of the grantee, in such case, to easements in and over the estate of the grantor ; but on a very different principle from that on which prescription or pre sumed grant is founded.   The right claimed depends on grant ; but the question often arises, from the ambiguity, brevity, or un‑certainty of the descriptive words used, what was the extent of such grant ; in other words, what was the intention of the par‑ties in making and accepting the grant.   In ascertaining this in‑tent, several rules of exposition are adopted, founded upon experi‑ence, to enable courts to determine, or to approximate to such meaning and intent.   It is a rule, that the language of a convey‑ance shall be construed most strongly against the grantor ; because it is his act, and the language that of his choice or dictation.   Again ; a grant being made for a valuable consider‑ation, it shall be presumed that the grantor intended to convey, and the grantee expected to receive, the full benefit of it, and therefore that the grantor not only conveyed the thing specifically described, but all other things, so far as it was in his power to pass them, which were necessary to the enjoyment of the thing granted.   Thus the grant of a mill actually driven by water, though not described as a water-mill in the deed, carries with it a right to the stream which supplies the mill, although it comes to the mill wholly through other land of the grantor.   He can‑not divert it, and thus derogate from the beneficial effect of his grant.   The grant of a messuage or tract of land, with no ac‑cess to it but over other land of the grantor, is by implication a tacit grant of a convenient right of way to it over such other land.   But there is another rule in ascertaining the meaning of

parties where the deed is silent, or the language defective or ambiguous, and one to which we more particularly before alluded ; and it is this : that it is competent, in order to show what the parties probably meant, where the language is not fully clear and unambiguous, to prove the local position, the relative situation of the estate granted, that of the estate reserved, and also the manner in which the grantor himself had used it, when owner of the whole. Such evidence of use of particular ways over one estate, in the occupation and enjoyment of the other, may tend to show what was necessary, or useful and convenient in this respect, and so considered by him who had a power to use both as he pleased, and therefore tends to show what, by necessary or reasonable implication, was intended. It is very clear that a grantor, by unequivocal words, may convey one estate by definite description, and create and annex thereto an easement in his own other land. This may also be done by necessary or reasonable implication, if the intent so to do can be inferred. Thus, if one grants an estate, with all the privileges and appurtenances, and there be a right of way over a third person's estate, that right of way passes. Indeed, such right of way passes as incident, though " appurtenances " are not expressed. *Kent* v. *Waite*, 10 Pick. 138. But if there be no such right of way, which may be legally and technically " appurtenant," but the grantor has commonly used a way thereto over his other land ; in order to give effect to the manifest intent, it may be construed to pass a right over such land, not as an appurtenance before existing, but as an easement created by the deed itself, and annexed to the estate granted. So if one grant an estate, with the ways and other easements actually used and enjoyed therewith, evidence *aliunde*, by parol or otherwise, may be given to prove that a particular way was then in use by the grantor ; and then it is held to pass as parcel of the estate conveyed. *White* v. *Crawford*, 10 Mass. 183. *Story* v. *Odin*, 12 Mass. 157. *M*rris v. *Edgington*, 3 Taunt. 24. *United States* v. *Appleton*, 1 Sumner, 492. *Salisbury* v. *Andrews*, 19 Pick. 250. This view may perhaps tend to reconcile authorities which may seem conflicting, tending on the one side to show that no length

of time, or constancy of use, can create an easement over one estate for the benefit of another, whilst there is unity of title in one owner — and on the other, that long use by the grantor may be evidence of title to the easement in the grantee. The long and constant use of a way over the land of another, without interruption or objection, is evidence of right, because it is not to be presumed that an owner would permit such use without right. But the long and frequent use of a way over a part of one's own estate, as conducive to the useful and convenient occupation of another part, tends to show that it was necessary or beneficial ; and, therefore, if there be no other way, or if there be any words describing or alluding to a way actually used, or when ways " appurtenant " are expressed, and in fact there is no way technically appurtenant, such previous use by the owner may be available to give effect to the presumption that it was intended that such right of way should pass, as parcel of, or incident to, the estate granted.

With this view of the law before us, we are to look at the deed by which the defendants' estate was granted by the plaintiff's predecessor, to ascertain the nature and extent of the plaintiff's easements, for a disturbance of which, this action is brought. It has already been decided that in the present case the actual use and enjoyment, on the part of the plaintiff and his predecessors, over the estate of the defendants and their predecessors, have been so nearly in conformity with the provisions of the deed, that it is to be presumed that the parties intended to claim and hold their rights under it, and, therefore, that the plaintiff's rights depend on the reservations in the deed, and not on prescription. The law will not presume a non-appearing grant, or raise a prescription, where a grant is produced, to which his use, occupation and enjoyment may be ascribed. The court were of opinion, that the plaintiff's rights depended on the deed from Haugh to Henry Tew, in 1703. In this deed, the grantor, having described an existing gate and passage way, of about five feet wide, on the southerly side of the estate granted, leading from the street, now Washington Street, into the yard of said messuage, made the following reservation : " Reserving out of

this bargain and sale, unto me the said Haugh, my heirs and assigns for ever, free liberty of ingress, egress and regress through and upon the said gate or passage way, for carrying and recarrying wood, or any other thing through the same, and over the yard or ground of the said messuage hereby granted, into and from the housing and land of me the said Atherton Haugh adjoining, for the use and accommodation thereof, without damnifying or annoying thereby the said Henry Tew, his heirs and assigns." Upon the construction of this clause, the court decided, that a convenient right of passage way was reserved for the benefit of the plaintiff's estate, but that the width of it was not fixed. And we are still of opinion, that that was the true construction. For, although the gate was described as "about five feet wide," there was no warranty of its width, and no words declaring that he should have the width of the way as it then existed, or any equivalent expression. And the word "about" indicates that it was not intended to be definite. It was therefore the right of a suitable and convenient passage for the purposes indicated. 20 Pick. 295.

On a subsequent trial, the plaintiff claimed a right to the use of the passage way, open to the sky, according to the lines of the south and west walls of the old building on the defendants' lot. As to arching over the passage way, the judge, at the trial, instructed the jury that if this did not occasion any inconvenience by darkening it, or otherwise, in respect to the uses for which it was reserved, the plaintiff would not be entitled to any damage on this ground ; but on this point they were instructed to assess separate damages. It appears that upon that ground, on that trial, the jury assessed damages in the sum of one dollar. On the same ground, the jury on the trial now under review, assessed damages in the sum of $ 350. It therefore now becomes necessary more carefully to investigate the right thus claimed by the plaintiff, and examine the principle on which it rests ; because, if it be true that the plaintiff has the right claimed, to have said passage way open to the sky, the defendants are under a corresponding obligation to take down their building, so far as it is erected over the said passage way.

The owner of an estate in fee, by virtue of his interest and power as proprietor, may make any and all beneficial uses of it at his own pleasure, and he may alter the mode of using it, by erecting or removing buildings over it, or digging into or under it, without restraint. *Cujus est solum, ejus est usque ad cœlum.* If any other person has an easement in it, the owner has still all the beneficial use, which he can have consistently with the other's enjoyment of that easement. If the easement is a right of way, this consists in a right to use the surface of the soil, for the purpose of passing and repassing, and the incidental right of properly fitting the surface for that use ; but the owner of the soil has all the rights and benefits of ownership, consistent with such easement. *Perley* v. *Chandler*, 6 Mass. 454. He is entitled to the herbage growing upon it. *Adams* v. *Emerson*, 6 Pick. 57. All which the person having the easement can lawfully claim is the use of the surface, for passing and repassing, with a right to enter upon and prepare it for that use, by levelling, gravelling, ploughing or paving, according to the nature of the way granted or reserved ; that is, for a foot way, a horse way, or a way for all teams and carriages. When no actually existing way, as bounded and located, is granted or reserved, the right of way, in point of width and height, shall be such as is reasonably necessary and convenient for the purposes for which it is granted. If it be a foot way only, it shall be reasonably wide and high for all persons to pass on foot, with such things as are usually carried by foot passengers. If it be a way for teams and carriages, it shall be of sufficient height and breadth to admit of carriages of the largest size in common use, and high enough for loads of hay, and other similar vehicles usually moved by teams. Under such circumstances, what is a reasonable height and width, is partly a question of fact, and partly a question of law ; the facts all being found by the jury, what is a reasonable width and height is a question of law ; or, to express the same thing in other words, what was intended by the parties to be the nature and extent of the right granted, is an inference of law, to be drawn from the terms of the instrument of grant, interpreted and explained by the facts and circumstances thus found by the jury.

When no dimensions of a way are expressed, but the object is expressed, the dimensions must be inferred to be such as are reasonably sufficient for the accomplishment of that object.   In the present case, the dimensions of the way are not expressed ; but the purpose for which it was reserved is expressed, and it goes far to enable us to ascertain the dimensions.   It was for the purpose of carrying wood, or any other thing, into and from the grantor's "housing and land adjoining, for the use and accommodation thereof."   The grantor's adjoining house, being a dwellinghouse, it is to be limited to articles usually carried to or from a dwellinghouse, in its ordinary occupation as such.   It thereby excludes the presumption that it was to be adapted to the carriage of merchandise, such as bales, boxes or casks. Wood must be taken to be fire-wood, and not timber or wood to be used for the purposes of manufacturing.   And " any other thing," though in terms of the largest sense, must be construed to mean other thing of like kind used in a dwellinghouse ; as vegetables, provisions, furniture, and the like.   Without examining it more minutely, we are satisfied that the right reserved was that of a suitable and convenient foot way to and from the grantor's dwellinghouse, of suitable height and dimensions to carry in and out furniture, provisions and necessaries for family use, and to use for that purpose wheelbarrows, hand-sleds, and such small vehicles as are commonly used for that purpose, in passing to and from the street to the dwelling in the rear, through a foot passage, in a closely built and thickly settled town.

Upon these views of the rules and principles of law applica ble to the present case, the court are of opinion that the defendants had a perfect right to build over the said passage way ; it being one of the beneficial uses of the property which could be made, and which, as owners, they had a right to make, consistently with the full and free enjoyment of the foo way on the part of the plaintiff.

We think that this opinion is not inconsistent with the opinions heretofore given at *nisi prius*, and by the whole court, though perhaps the point was not stated with sufficient precision for the purposes of deciding definitely the rights of these parties, and put-

ting an end to the long controversy which has subsisted between them. For this purpose, it is necessary to distinguish accurately between an act, which is of itself an infringement of another's right, and an act which of itself is not an infringement of the right of another, but which, in its consequences, may cause a damage to that other. In the former case, no special damage, no actual pecuniary loss need be stated or proved ; the law presumes that a party sustains some damage from the infringement of his right, and enables him to maintain an action, whether he have suffered actual damage or not. And in such case, it is often highly proper that a party should bring his action, though he may expect to recover nominal damage only, for the purpose of vindicating his right, and thereby preventing the adverse party from acquiring a right, by long and uninterrupted use. 16 Pick. 247.

But there is another class of cases, where although the act complained of may not be unlawful, or, if unlawful, not an infringement of any right of the plaintiff, no action can be maintained without alleging and proving a special and particular damage to the plaintiff ; and the damages to be recovered are confined to an indemnity for the loss thus proved to have been sustained. The plaintiff sets forth the act done, and alleges that by means thereof, he sustained the damage complained of, technically called declaring with a *per quod.* As where the plaintiff complained that while he was proceeding along a navigable creek with his barge laden, &c. the defendant obstructed the creek, *per quod* the plaintiff was compelled to carry his goods around, at a great expense. In such case the action lies for the special damage immediately occasioned by the obstruction ; but it would not lie for the obstruction itself, without special damage, because although it was an infringement of a public right, and so was unlawful, yet it was not an infringement of the peculiar right of the plaintiff. *Rose v. Miles,* 4 M & S. 101. So for special damage occasioned by obstructing a highway. *Greasly v. Codling,* 2 Bing. 263. So by a proprietor of land through which a water-course runs, against a proprietor higher up, where the gravamen of the com

plaint against the upper proprietor was, that by damming up the water above, it came with greater impetuosity, and thereby injured his banks.    *Williams* v. *Morland*, 2 Barn. & Cres. 910. *S. C.* 4 Dowl. & Ryl. 583.    But it might be otherwise, where the plaintiff had acquired a right to the water by appropriation, and the complaint was for the infringement of that right. *Bealey* v. *Shaw*, 6 East, 208.    It is manifest, we think, that this distinction has become important in the present case, because a jury have heretofore given one dollar for this item, treating it as a case of mere nominal damages ; whereas, the verdict now under consideration assesses that item of damage at $ 350.

We have stated that the opinion now expressed will not ap pear, upon strict comparison, to be inconsistent with those formerly expressed, though in the former cases the rule prescribed may have been less precise and definite.    It may, therefore, be proper to review them.    On the first trial, the jury were instructed as to the passage way, that the reservation in the deed was answered, by giving the plaintiff a passage way as convenient as it was when the reservation was made ; that if the present passage way was not so wide as before, and was not open above, yet if it was as convenient, &c. ; but that the defendants had no right to narrow or cover the passage, *so as to cause serious inconvenience* to the owners, &c.    The observation of the court, when this part of the case came before them on a motion for a new trial, was, that by the case it appeared that the passage had been narrowed and arched over, and rendered darker and less convenient.    And in reference to the instruction to the jury, that so far as the plaintiff had suffered inconvenience from the alteration, he was entitled to recover damage, the court say that this was correct.    20 Pick. 295.

It is manifest, we think, that in these remarks, so far as they related to the dimensions of the passage way, the court considered that the passage way, as it was, in point of convenience, at the time it was reserved, and the width of it, for the purpose for which it was reserved, might be considered as equivalent, and that the one description was used instead of the other. For, in this same opinion the court say, that they are satisfied that

a convenient right of way was reserved, but that its width was not fixed. 20 Pick. 295. But if it was to be a passage way as it existed at the time of the reservation, its width would have been fixed. In point of fact, as the buildings then stood, the passage used was of irregular breadth, being for a part of the way eight or nine feet wide. As a definition of the plaintiff's right, it would have been more exact to say, that it was a right of way suitable and convenient for the purpose for which it was reserved, namely, as a foot way from a public street to a dwellinghouse in the rear, and for carrying wood and other articles, incident to the occupation and enjoyment of such a dwellinghouse. This admits of any alteration and improvement in the estate over which the easement is reserved, consistent with the preservation and maintenance of the right of passage itself. So it has been held in analogous cases. A grant of water, sufficient to supply a grist mill, limits the quantity of water, but not the use to which it is to be applied. If, in the progress of improvement in the useful arts, the owner removes the grist mill, and erects a cotton factory, it is held, that he has a right to do so, taking no more water for his factory, than he had a right to take for his grist mill. Such construction is conformable alike to the rules of law, and to the principles of public policy. The law, carrying into effect the intention of the parties, does not intend to restrict the right of ownership of the real estate subjected, further than is necessary to give full effect to the easement; and public policy requires, as well in cities as elsewhere, that an owner of real estate should be allowed to make all the improvements upon it, which can be made consistently with the just rights of others.

So far as the remark of the court applied to the darkening of the passage way, it did not go on the distinction between doing an act, which the defendants have no right to do, by building over the passage way, and doing that which they had a right to do, but doing it in such a manner as to cause some slight consequential damage to the plaintiff. Besides, the damage given by the jury on that ground, being merely nominal, and the instruction not being wrong in point of law, and especially as the

plaintiff was entitled to hold his verdict for other damages, the court had no good reason for setting aside the verdict, even though it might have appeared to them, that, upon the evidence, no case for any consequential damages was established in point of fact.

In saying, that the actual condition of the way, at the time of the reservation, is not the measure and definition of the plaintiff's right, it is necessary to guard against two misconstructions of this remark. We do not mean to say, that when a way is actually located and fixed by definite and visible objects, as by buildings or fences, the grant or reservation may not refer to such way actually existing, and that the limits then would not be fixed by the act of the parties themselves. The contrary is true in such case. *Salisbury* v. *Andrews*, 19 Pick. 250. Even where an estate is granted with all ways "appurtenant," and there is, strictly speaking, no way appurtenant, but there is an actually existing way over the grantor's other land, it shall be taken, that the way actually *used* and *existing*, though miscalled "appurtenant," shall pass ; because it must be understood that such was the intent of the parties. *Morris* v. *Edgington*, 3 Taunt. 24. The other misconstruction, against which we would guard, is this ; when it is said, that in such a case as the present, the actually existing state of the passage way, at the time of the reservation, is not the measure or description of the right reserved, we do not mean to say, that such state of the passage way may not be evidence, and often evidence of a very forcible and determinate character, to prove what is reasonable and convenient, and what those most conversant with the matter have, by their practice, shown to be in their opinion most reasonable and convenient, under given circumstances. And this goes far to show what was in the mind of the court, when they seemed to consider the actual condition of the way, at the time of the reservation, as equivalent to the convenient passage way reserved by the deed.

This cause again came before the court in June 1838. The judge, on that trial, had instructed the jury, that as to arching over the passage way, if it did not occasion any inconven

lence, by darkening it or otherwise, in respect to the uses for which it was reserved, the plaintiff would not be entitled to any damage on this ground.   20 Pick. 298.   This is wholly consistent with the opinion now expressed, but without stating definitely what were the rights of the defendants, as owners, over the passage way, and therefore less explicit, than it might have been useful to state it, under the circumstances.   In regard to the breadth, the jury were instructed, that the defendants' were bound to maintain a passage way, equal in breadth to the distance between the old gate posts, and otherwise convenient for the uses for which it was reserved.   20 Pick. 299.   The former part of this direction was, we think, inaccurate, in taking the distance between the gate posts as the measure of the plaintiff's right ; but supposing that width and a reasonable width to be practically the same thing,   this mode of laying down the rule would lead to no practical error in the result.   The opinion of the whole court, on this part of the case, was extremely brief, and we are apprehensive that from its conciseness, or from the implications which it carries, rather than from any thing expressed, it may have led to an erroneous application of the rule of law, in the subsequent trial.   It is thus stated : " The right of way from Washington Street to the rear of the defendants' buildings seems to be definite and certain.   The use of it, as it existed in fact from the date of the reservation to the time of the trial, has been satisfactorily ascertained.   It was then uncovered.   No right to cover it was granted.   The jury have found it to be darkened and injured by the arch over it, and have assessed damages for the injury.   Of this there can be no complaint " 20 Pick. 302, 303.

The way, indeed, was definite and certain as to its direction and the purpose for which it was reserved ; and the long use was good evidence of what the parties concerned understood as necessary and convenient.   But when it is said, that the passage way was then uncovered, and no right to cover it was granted, especially as the plaintiff claimed a right to have it open to the sky, it may have been understood, though not so expressed. that, without such right granted, the defendants had no such

right. We think it could not have been so intended, and that the court did not pass upon that question; especially as the cpinion immediately proceeds to state, that the jury have found that it had been "*darkened and injured* by the arch over it," and assessed damages for the injury. Supposing, then, that the defendants had a right to arch the passage over, yet, if in the exercise of that right, they had done it in such a manner as to injure the plaintiff, and that by means thereof he had suffered special damage, he might recover the damages given in that case, on the principle of the maxim, that every one shall so use his own property and his own right, as not to injure another. This principle may be well illustrated by a recent case. The defendants were erecting a steam boiler and apparatus on land adjoining the premises of the plaintiff, and by some mismanagement it exploded and did damage to the plaintiff's buildings. The defendant was held liable. *Witte* v. *Hague*, 2 Dowl. & Ryl. 33.

It therefore does not appear whether the damage, given for arching over the passage way, was given for a supposed violation of the plaintiff's right in the estate, or for a supposed consequential special damage done to the plaintiff, in the exercise of the defendants' own right in a careless or improper manner; and there was nothing in the instruction to the jury, under which that verdict was found, to show that it was not given on the latter ground; in which case, there was no reason to set aside the verdict. The amount of the damages was not such as to indicate that the jury might not have proceeded on the latter ground, or to call the particular attention of the court to the distinction between these grounds. We think, therefore, that the question now distinctly brought before the court has not been decided by any of the opinions heretofore given by the court. That question is, whether the defendants had a right to build over the passage way. On that question, for the reasons herein before expressed, the court are of opinion, that the defendants, as owners of the land, had a right to build over the ground on which the passage way in question was reserved; that the plaintiff, under his reserved privilege, had no right to have it open

Atkins v. Bordman & others.

above to the sky, or to any other height, except so far as necessary and convenient for the uses of the foot way reserved, sufficient in height and breadth for the purposes expressed in such reservation.

Having taken this more broad and extended view of the rights of these parties, and the grounds of law on which they rest, it will be the less necessary to take into consideration the particular exceptions to the charge of the judge, upon which the cause now comes before us. So far as the judge charged the jury, that the defendants had no right to arch over the passage, and use the space over it for any purpose of building, such charge was erroneous, and had a tendency to mislead the jury. We are also of opinion, that so far as the judge instructed the jury, that the defendants were bound to keep open a passage way equal in width to the distance between the old gate posts, it was not strictly correct, although a passage of such width, and one of reasonable width, might not practically differ. We are aware that a similar instruction had before been given at *nisi prius*, but it was before the case had been so fully considered as at present.

For the reasons already given, the court are of opinion that the instruction of the judge was incorrect, so far as he directed the jury that the defendants were liable for damages if the new passage was rendered more *inconvenient*, by being covered, by reason of its being made a place of resort, or by being darkened, or otherwise.

As to the darkening, we think the jury should have been instructed, that the defendants were not liable for damages, unless, from the length of the passage way, it was so darkened as to render it unfit for the purposes of a passage way. We may conceive of a covered passage of eight or ten feet high, of a length so considerable, that unless openings were left, there would not be light enough admitted at the ends to enable persons to use it with comfort, for the purposes of a passage way. But unless darkened to that extent, it is not a case for damage. It must render the premises to a sensible degree less valuable for the purposes of business. *Parker* v. *Smith*, 5 Car. & P. 438. *Back* v. *Stacey*, 2 Car. & P. 465. *Wells* v. *Ody*, 7 Car. & P. 410. *Pringle* v. *Wernham*, 7 Car. & P. 377.

We think, also, that the jury should have been instructed, that the defendants were not liable for damages by reason of this covered passage being made, to a greater extent, a place of resort by other persons ; first, because the consequential damage from that cause is too remote to be made the subject of an action ; but more especially, because the plaintiff must either keep the passage closed, and thus prevent the entrance of other persons, or seek his remedy by law, against those who do the actual injury.

One other subject, growing out of this report, remains for consideration. In the present action, the plaintiff claimed damages for injury done to his tenement by darkening an attic window, which overlooked the roof of the defendants' *old* building. From the manner in which the facts are stated in the report, and the plans exhibited, I am not sure that the court fully understand the question. As we understand it, the complaint is, that the defendants' predecessor, by taking down the old building and erecting another somewhat higher and deeper, that is, further west, has obstructed the window in question, and diminished the air and light formerly received through it into the plaintiff's house. Taking this to be the case, we think it was determined in the former case, and rightly determined. The court did not, on a former occasion, mean to say that where one person, owning two contiguous tenements, grants one to another person, reserving certain easements for the benefit of his own estate, and granting others in his own estate for the benefit of the estate conveyed, the parties and their successors might not acquire other easements respectively, by grant, or prescription arising subsequently. But the principle was this ; that when the enjoyment of a particular privilege may reasonably be referred to a deed, it shall be considered as derived from such deed, and then the just construction of the deed will fix the rights of the parties. In the present case, Haugh, owning two tenements contiguous to each other, granted one in fee to Tew, reserving certain easements. Such right in fee vests in the grantee all the powers of an owner, and of course a right to pull down the buildings and erect new ones ; and such right can be restrained and qualified

only by express reservation. The deed in question contains this clause · " And it is mutually agreed between the said parties, that whensoever the said Henry Tew, (the grantee,) his heirs or assigns, are minded to make or add any addition of building backward, he or they shall only make the breadth thereof equal with the breadth of the back of the chimneys of the said tenement hereby granted."

It must be recollected, that building backward was an expression equal to building more westwardly, or more distant from the street. But a restriction against extending *in breadth*, prohibited the grantee from building more northerly, or in other words, nearer the grantor's other tenement. The case, then, is that of a grantor conveying a tenement adjoining his own ; the parties understand that the grantee, as owner, will have a right to alter the buildings, or erect new ones, and they provide, by an express stipulation, that in such event the grantee shall not erect any building nearer than a certain prescribed line to the tenement of the grantor. But no limit is prescribed as to the height of the building. The construction we formerly put on this agreement was, that as *expressio unius exclusio est alterius*, the limitation upon the right of the grantee as to nearness, without any stipulation as to the height of such building, raised a fair implication that no such restriction was intended. And we still consider that this construction of this agreement of the parties was correct. The grantor owned both tenements ; he had the full disposing power ; he might decline selling at all, and he might prescribe such conditions and limitations as he might think expedient. The more he charged the estate granted with incumbrances and servitudes, the less price he would probably obtain for it. And so, on the other hand, the more liberal the grant, the higher the price. We are then to presume, that when he had the entire power in his own hands, he took care to protect his own estate, and secure the quantity of air and light necessary to the enjoyment of it, by prohibiting his grantee from building so near thereto as to injure it. If, then, the defendants have not built within the limit so prescribed, or, conformably to a former judgment of the court, have removed their building, so

far as it was erected within that limit ; and if, as we suppose, the darkening of the plaintiff's attic window was occasioned by building higher than the old building, but within the limit thus prescribed by the deed, it was *damnum absque injuria,* and the plaintiff can recover no damage on that account.

*Verdict set aside, and new trial granted.*