ILLINOIS DISTRICT OF AMERICAN TURNERS, INC., Plaintiff and Counterdefendant, v. WILLIAM J. RIEGER *et al.*, Defendants-Appellees and Counterplaintiffs (Clara Zweifel *et al.*, Intervening Plaintiffs-Appellants and Counterdefendants).

Second District   No. 2—01—0008

Opinion filed May 8, 2002.

Thomas G. Griffin, Kenneth J. Ashman, and Sara L. Spitler, all of Ashman & Griffin, L.L.C., of Chicago, for appellants.

Kevin J. O'Brien and Jenette M. Schwemler, both of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellees.

JUSTICE O'MALLEY delivered the opinion of the court:

Intervening plaintiffs, Clara Zweifel, Ann Trankle, Warren Dalbke, Roy Hugi, Barbara Hugi, Richard and Delores Schnell, Ken and Jean Hirsch, Denny and Jerry Malone, Rudi and Carol Dian, Ken and Audrey Campbell, Thomas and Madelaine Cazel, Cherie Dalbke, and Gerald and Joanne Springer, appeal the circuit court's judgment

in favor of defendants, William J. Rieger, Shirley MacFarlane, Joseph S. Steib, Margarette L. Steib, George W. Koester, Terry L. Koester, Helen Koester, Virginia N. Pelletier, Camille L. Warga Trust dated 9/19/92, Frank J. Warga, Frances Irmisher, Edward Schaefgen, Frieda Schaefgen, Gail Adkins, and Kerns Subdivision Roads Association, Ltd., on all counts of the complaint of plaintiff, the Illinois District of American Turners, Inc., and in favor of defendants on their counterclaim. We affirm.

## BACKGROUND

This case concerns certain improvements defendants made to an easement they claim to hold in common with plaintiff, the Illinois District of American Turners, Inc. The two main issues are whether plaintiff took the easement by adverse possession before the improvements began and, if not, whether the improvements were permissible under the law of common easements.

The following facts are not in dispute. Additional undisputed or disputed facts will be provided below as each issue is addressed. In or around June 1915, N.B. Kerns purchased a parcel of property located within the Township of Algonquin. In July 1915, he prepared a plat of subdivision for the property and filed it on August 3, 1915, in McHenry County. The plat is entitled "N.B. Kerns Subdivision Number 1" (Kerns subdivision). The plat has never been vacated from the plat books.

On August 19, 1915, Kerns filed an action to quiet title to the land he platted as the Kerns subdivision just days before, and the trial court issued an order in September 1915 granting Kerns clear title. The details of the quiet title action are set forth below. Following the quiet title action, Kerns sold lots 5, 6, 7, 11, 12, 13, 14, 15, 16, and 19 in block one to the predecessors in interest of defendants Rieger, MacFarlane, the Steibs, the Koesters, Pelletier, Warga, Irmisher, the Schaefgens, and Adkins. (Unless otherwise indicated, "defendants" hereinafter refers only to these defendants; Kerns Subdivision Roads Association, Ltd. (KSRA), and the Camille Warga Trust (Trust) presently own none of the property at issue in this proceeding.) Subsequently, in December 1919, Kerns conveyed 40 acres, which included the remainder of the lots as well as surrounding property, to the Ausschuss of the Illinois Turnbezirk, plaintiff's predecessor in interest. The warranty deed specifically excepted the 10 lots previously conveyed, referring to them as lots within "N.B. Kerns Subdivision No. 1." Since the conveyance, plaintiff has used the property as a licensed campground (Turner Camp) for its members (Turner members). Plaintiff has issued detailed rules regarding membership in

the camp and use of camp property. At the entrance to the Turner Camp sits a guardhouse or ticket booth; the camp rules limit the use of camp property to members and their guests. The rules governing property use do not apply to the private lots owned by defendants. Defendants have been Turner members for many years, owning cottages on their private lots.

The Kerns subdivision consists of 36 relatively uniform lots divided into two blocks. (See appendix for a diagram of the plat.) The plat depicts four roadways: Park Way, Ridge Avenue, Oak Lane, and Hill Crest Avenue. The platted roads have never been dedicated to the public nor have any of them been developed in their entirety. The roads meandering throughout the subdivision in the diagram are not depicted in the plat; they are the result of sporadic and unsystematic development throughout the existence of the Turner Camp. The shaded portions of the roads indicate a gravel surface; the unshaded portions indicate a paved surface.

Since purchasing the property from Kerns, plaintiff has erected (in addition to the roads) several cottages, common buildings, culverts, outdoor restrooms, water wells, and athletic fields and courts on the lots and their surrounding property. Defendants and their predecessors in interest were among the Turner Camp members who provided the impetus for these improvements. Also, as noted below, defendants made additional improvements to the roads without plaintiff's approval.

The Turner Camp cottages (that is, those cottages not located on defendants' private lots) are either leased or rented by Turner members. Owners of cottages have a "ground lease" giving them a possessory interest only in the land over which their cottages are situated. Renters and owners alike are responsible for maintaining the areas surrounding their cottages, although those areas are owned by plaintiff.

Initially, some of the Turner Camp cottages fell entirely within platted Ridge Avenue. These were removed by the mid-1930s, although one of the cottages was removed more recently, its concrete foundation still standing just inside the western boundary of Ridge Avenue. Currently, portions of several cottages encroach on Ridge Avenue. Other objects falling inside the Ridge Avenue right-of-way include two water wells, several power poles and accompanying wires, a footbridge across a stream (a tributary of the Fox River) that crosses Ridge Avenue in front of lot 18 in block one, and a footbridge and culvert across a gully that runs roughly north-south through Ridge Avenue between lots 11 and 13 in block one. Oak Lane and Hill Crest Avenue each have one cottage presently standing entirely within their boundaries.

The graveled area occupying platted Ridge Avenue between lots 14 and 16 in block one is designated by plaintiff as the "Swiss parking lot." Not pictured in the diagram is the construction that is at issue here—a roadway extending westward in the Ridge Avenue right-of-way from the western boundary of the Swiss parking lot. Before this construction, there was no development of a road or parking lot in platted Ridge Avenue west of the Swiss parking lot. Individuals using cottages in lots 17, 18, and 19 of block one had to park in the Swiss parking lot and walk a distance along a footpath to reach their cottages.

A hill runs through lots 10, 11, and 12 in block two. Ridge Avenue between the Swiss parking lot and the narrow driveway running into lot 11 of block one was passable by automobile before drainage from the hill created a gully that rendered the stretch impassible early in the 1970s. The western boundary of the Swiss parking lot was lined with concrete posts in the 1940s. Several years later, the posts were replaced with logs. It is unclear from the record whether the logs permit a vehicle to enter the impassable area to the east of the Swiss parking lot.

Although currently maintained as a means of accessing the Fox River, the northern portion of Park Way has not been graveled or paved. Neither Oak Lane nor Hill Crest Avenue currently is maintained as a road or pathway, although there is evidence that Oak Lane has been used occasionally as an alternative means of driving from the Swiss parking lot to the main road.

All Turner members, whether private lot owners or not, have equal access to camp facilities and activities under the Turner Camp rules. They have equal access to the property that is platted as the Kerns subdivision rights-of-way. The passable roads in the Turner Camp are used by all Turner members as well as by guests and service providers such as utility companies and delivery persons.

For the past several years, defendants have resisted the Turner Camp's attempt to regulate activities within the platted roads. Generally, defendants insisted that the platted roads were public rights-of-way designed to provide them access to their lots while plaintiff insisted the platted roads no longer exist and that it owns the property. Disregarding plaintiff's rule that vehicles be parked only in designated parking areas, defendants have parked their vehicles along the roads in front of their lots. Early in the 1990s, against plaintiff's wishes, defendant Joseph S. Steib, owner of lot six in block one, widened and paved the road in Ridge Avenue in front of lots five and six in block one to provide better parking. Steib also erected a "private parking" sign in front of his lot. Additionally, defendants who own lots

adjacent to the Swiss lot have objected to people parking immediately in front of their cottages. As noted above, these defendants installed concrete posts along the Swiss lot in the 1940s to protect their fences from vehicles parked in the Swiss lot. A few years later these posts were replaced with logs.

Defendant Rieger owns a Turner Camp cottage on lot 18. (As noted above, lot 18 is owned by plaintiff.) Rieger also owns lot 19. For decades, Rieger drove to and from his cottage and his property using a path that ran to the west of the Kerns subdivision through a portion of plaintiff's property that formerly was a golf course. In 1988, Rieger proposed building a road in platted Ridge Avenue from the Swiss parking lot to lot 19. In a letter to Rieger, plaintiff indicated its decision to "table" the issue.

The issue of developing Ridge Avenue was not broached again for several years. In March 1996, some of the defendants formed KSRA. According to its articles of incorporation, KSRA's purpose is "to promote, foster or encourage civic purpose and activity as it relates to the care, maintenance, improvement, beautification and protection of the roads in the Kerns Subdivision." In a written proposal it submitted to plaintiff in March 1996, KSRA set forth four aims: (1) "unrestricted access and use of the roads for private lot owners as well as family and guests (*i.e.*, the public)"; (2) "limitations on parking in front of private lot owners [*sic*] property"; (3) "consensus regarding the development of Ridge Avenue"; and (4) "consensus for the development and improvement of Park Avenue."

Plaintiff made no formal response to the presentation. In August 1996, plaintiff closed the golf course route, cutting off the sole vehicular access to lot 19. Subsequently, KSRA approached Robert Miller, Algonquin Township highway commissioner, for information on developing the platted roadways in the Kerns subdivision and applying to have them accepted by the township road system for paving and future maintenance by the township. KSRA eventually contracted with N.J. Funk to develop a roadway within platted Ridge Avenue. Construction began in November 1996 under Miller's supervision. Although there is no evidence that the Kerns subdivision is located within the Village of Algonquin, James Wilford, street superintendent for the village, also provided guidance during the construction. Defendants elected to begin their project by installing a road in platted Ridge Avenue between the Swiss parking lot and lot 19 in block one. Construction involved excavating part of a hill and placing a culvert and fill material in the stream that crosses the western end of Ridge Avenue. The ultimate goal was to gravel all roads in the Kerns subdivision and qualify them to be paved and maintained by Algon-

quin Township. Plaintiff voiced its objection, but the construction on Ridge Avenue continued.

Informing KSRA that it was violating federal law in discharging fill material into the stream without a permit, the Army Corps of Engineers halted the construction in June 1997 pending the outcome of this action, which plaintiff had filed in December 1996. Plaintiff alleged negligence and both private and public nuisance. Plaintiff also sought a declaratory judgment (1) "that the uninstalled roadways depicted in the N.B. Kerns plat of subdivision have been abandoned and extinguished by adverse possession and operation of law"; (2) "that Defendants have no easements or other rights with respect to the uninstalled, abandoned and extinguished roadways depicted in the plat of subdivision"; and (3) "that [plaintiff] owns the property on which such uninstalled, abandoned and extinguished roadways are depicted, and can continue to maintain and operate such property as a rustic nature camp."

Defendants counterclaimed, requesting a declaratory judgment that (1) "the Defendants have the right to improve, develop and maintain Ridge Avenue within the platted right-of-way"; (2) "the roads within the subdivision identified in the Filed Plat shall be forever open to the use of the public free from all claim of interference of the Plaintiff inconsistent with such use"; and (3) "the Plaintiff has no power or authority to control or restrict access or improvement to the subdivision roads within the platted right-of-way."

Several months before trial, certain Turner members who own cottages and hold ground leases within the Turner Camp were allowed to intervene. In their complaint, intervening plaintiffs claimed that defendants breached a duty to them "by creating and causing a substantial interference with their right to use and enjoy their property." On the day of trial, the parties stipulated to a dismissal of the complaint without prejudice on the ground that the interests of the interveners were aligned with those of plaintiff.

Following a bench trial, the court granted judgment against plaintiff on all counts of its complaint. The court also granted judgment in favor of defendants on their counterclaim. The court stated that its judgment on the counterclaim was "limited to the extent provided in the filed plat of subdivision and the finding in favor of defendants on plaintiffs [sic] Count 6." The court also refused to "rule the roads 'public' or [rule on] the extent the defendants can improve within the right-of-way." Although plaintiff decided not to appeal, intervening plaintiffs filed an appeal.

## ANALYSIS

### I. Standing

In an unpublished part of this opinion, we discuss and reject defendants' arguments that intervening plaintiffs have no standing to bring this appeal.

### II. The Quiet Title Action

Intervening plaintiffs reassert the argument plaintiff pressed in the court below that the order granting Kerns clear title to his land extinguished the plat of subdivision he filed only days before. Kerns' complaint named certain defendants whose asserted interest in the land he wished to declare invalid. The complaint also specified in detail the "clouds, imperfections and irregularities" upon the record title for the land that Kerns sought to remove. The plat of subdivision was not listed. Despite this, intervening plaintiffs insist that the plat was extinguished by operation of the following declaration by the court, particularly the emphasized language:

> "Kerns is the owner of said real estate, free and clear from all the clouds, imperfections, irregularities and omissions set forth in the Bill of Complaint filed herein *and that all or any imperfection, irregularity, cloud or omission now existing in his title to said real estate is hereby corrected, released and discharged of record and that no person other than the complainant has any interest whatever in and to said real estate so owned by him* and that the defendants and each one are hereby decreed to be estopped, cut off, foreclosed and debarred from ever asserting any right, title, claim, interest or demand in and to the premises herein decreed to belong to the complainant herein, unless they or either of them shall obtain such interest from the complainant herein and the complainant's title to said real estate is hereby decreed to be as complete and perfect as though said errors, clouds, imperfects [*sic*] and omissions had never existed of record." (Emphasis added.)

■ Rather than find this argument waived, which would be well within our power because intervening plaintiffs cite absolutely no authority for it (see *People v. Hood*, 210 Ill. App. 3d 743, 746 (1991)), we dispose of it quickly by reference to the basics of the law of quiet title actions. Intervening plaintiffs suggest that Kerns' apparent act of seeking the extinguishment of a plat he had filed just days ago was "peculiar" but nonetheless successful. Intervening plaintiffs are puzzled by Kerns' actions because they misunderstand the nature of a quiet title action. An action to quiet title in property is an equitable proceeding wherein a party seeks to remove a cloud on his title to the property. *Lakeview Trust & Savings Bank v. Estrada*, 134 Ill. App. 3d

792, 811 (1985). "[T]o constitute a cloud there must be a semblance of title which is, in fact, unfounded and which casts a doubt upon the validity of the record title." *Hill v. 1550 Hinman Avenue Building Corp.*, 365 Ill. 129, 134 (1936). A valid interest in property cannot be a cloud on title. See *Hill*, 365 Ill. at 134 (a valid lease cannot be a cloud on title). Intervening plaintiffs' argument fails because they do not dispute that Kerns created a valid plat of subdivision.

■ The argument fails for the additional reason that a quiet title action does not lie where the defendant has not made an adverse claim to an interest in the plaintiff's property. See *McCarty v. McCarty*, 275 Ill. 573, 578 (1916); *Sharp v. Sharp*, 333 Ill. 267, 279 (1928); *Vandiford v. Vandiford*, 241 N.C. 42, 45, 84 S.E.2d 278, 281 (1954) (for a quiet title action to lie, "[t]he plaintiffs must own the real property in controversy, or have some estate or interest in it; and the defendants must assert some claim thereto adverse to the plaintiffs' title, estate or interest"). We know of no individual or group who, at the time of the quiet title action, could have claimed an interest adverse to Kerns by reference to the plat of subdivision because Kerns had conveyed no interest in any of the lots at that time. Therefore, we conclude that there is no merit to the argument that the plat of subdivision was eliminated in the quiet title action.

### III. Adverse Possession

■ There is no dispute that defendants' predecessors in interest purchased lots laid out in a published plat of the Kerns subdivision. There is no dispute that the Kerns subdivision has never been vacated from the plat books. Therefore, our analysis is framed by the following principles:

> "Where the owner of land lays it out in lots and blocks and makes and exhibits a plat thereof showing streets and alleys and sells some of the lots with a clear reference to the plan, the purchaser acquires as appurtenant to the lots every easement, privilege and advantage which the plan represents as belonging to them as a part of the platted territory. This privilege is not limited to the purchaser, but is a right vesting in the purchaser that all persons whosoever, as their occasion may require, may use the streets, alleys and other public places according to their appropriate purposes. The sale and conveyance of lots according to a published plat implies a grant or covenant to the purchaser that streets, alleys and other public places indicated as such upon the plat shall be forever open to the use of the public, free from all claim of interference of the proprietor inconsistent with such use. [Citations.] It is unimportant whether the public has so far accepted the dedication as to be bound to keep the streets and alleys in repair, since the

question involved is simply one of private right." *Wattles v. Village of McHenry*, 305 Ill. 189, 192 (1922).

The easement appurtenant to each lot is private property; it cannot be lost by mere nonuse where there is no adverse possession. *Wattles*, 305 Ill. at 192.

◼ Intervening plaintiffs claim that the property comprising the platted roadways has been taken by adverse possession. Property is not taken by adverse possession unless the following elements exist concurrently for 20 years: (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious, and exclusive possession of the premises, (5) under claim of title inconsistent with that of the true owner. *Joiner v. Janssen*, 85 Ill. 2d 74, 81 (1981); 735 ILCS 5/13—101 (West 1998). Even a one-day lapse in the concurrent existence of all five elements resets the 20-year period. *General Iron Industries, Inc. v. A. Finkl & Sons Co.*, 292 Ill. App. 3d 439, 446 (1997). All presumptions are in favor of the title owner, and "the burden of proof upon the adverse possessor requires that each element be proved by clear and unequivocal evidence." *Joiner*, 85 Ill. 2d at 81. Recently, courts have applied the equivalent "clear and convincing" burden of proof in adverse possession cases. *Estate of Welliver v. Alberts*, 278 Ill. App. 3d 1028, 1036 (1996); see also *Sierens v. Frankenreider*, 259 Ill. App. 3d 293, 298 (1994). On review, a court will not disturb the findings of a trial court as to the proof of the elements of adverse possession unless the findings are against the manifest weight of the evidence. *Welliver*, 278 Ill. App. 3d at 1036.

◼ We affirm the trial court's finding that the easements were not taken by adverse possession. Plaintiff failed to demonstrate at trial that its possession of the property was exclusive. The party claiming exclusivity need not show that he possessed the property to the exclusion of all others. *Chicago Steel Rule Die & Fabricators Co. v. Malan Construction Co.*, 200 Ill. App. 3d 701, 707 (1990). However, because exclusivity requires that the claimant possess the property independent of a like right in others, the rightful owner must be altogether deprived of possession. *Chicago Steel*, 200 Ill. App. 3d at 707. " 'Any sort of joint possession with the owner is not sufficient to support title by adverse possession. The owner must be wholly excluded from possession by [the] claimant for the stated period.' " (Emphasis omitted.) *Welliver*, 278 Ill. App. 3d at 1039, quoting *Fiorella v. Jones*, 259 S.W. 782, 785 (Mo. 1923).

◼ Defendants and intervening plaintiffs are all Turner Camp members who have enjoyed equal access to the land within the Turner Camp boundaries, including the platted roads. The evidence discloses no 20-year period in which defendants did not possess and use the

platted roadways as other Turner members did. Defendants even performed several acts of dominion over the platted areas. For instance, defendants the Steibs, Rieger, the Koesters, and Pelletier developed and maintained roads within platted Ridge Avenue by paving, spreading gravel, and trimming weeds. Defendants did not always seek plaintiff's prior approval for these improvements; some of these acts even were done against plaintiff's express wishes. It is true that the property platted as roadways was subject to Turner Camp rules, but it is also undisputed that defendants never acquiesced in plaintiff's notion that, as owner of this property, it had authority to prevent defendants from accessing their lots via the platted roadways. Defendants assert that, historically, they and their predecessors in interest treated as roads the areas that plaintiff designated as parking lots. The evidence shows that defendants and their predecessors in interest consistently denied plaintiff's authority to regulate the areas within the platted roadways. For instance, defendants displayed their defiance by parking in front of their lots along the roadways in Ridge Avenue rather than in areas designated by plaintiff for parking. Also, against plaintiff's wishes, defendants widened the roadways in front of their lots to facilitate this parking.

Intervening plaintiffs rely on *Swedish Evangelist Lutheran Church v. Jackson*, 229 Ill. 506 (1907), to no avail. There, the defendant erected a fence across the easement at issue, using the enclosed area as a garden while entirely excluding the owner of an adjacent lot from possessing it. The court found that the claimant thereby obtained exclusive possession of the easement. *Swedish Evangelist*, 229 Ill. at 511. Although platted Ridge Avenue between the Swiss parking lot and the narrow drive running into lot 11 in block one has been impassable by vehicle for several years, it was a natural condition (namely, erosion), not attempts by plaintiff to exclude defendants, that created the situation. Moreover, that stretch of Ridge Avenue is impassable by all Turner members, not just defendants. We conclude the exclusivity element was not established in this case.

We hold, therefore, that the trial court's finding that the platted roadways in the Kerns subdivision were not extinguished by adverse possession is not against the manifest weight of the evidence.

## IV. Negligence and Nuisance Claims

In its complaint, plaintiff alleged negligence, gross negligence, negligence *per se*, private nuisance, and public nuisance. Plaintiff sought recovery not only for the alteration of the landscape within the Ridge Avenue right-of-way, which consisted of tree and shrub removal, installation of a culvert in a stream, and excavation of part of a hill,

but also for damage caused to properties adjacent to the right-of-way by sediment runoff from the new road. In its negligence *per se* count, plaintiff alleged that defendants violated state, local, and federal laws in causing the construction. The trial court entered judgment against plaintiff on the negligence and nuisance counts. We will not disturb that decision unless it is against the manifest weight of the evidence. *Pickus Construction & Equipment v. American Overhead Door*, 326 Ill. App. 3d 518, 523 (2001).

Intervening plaintiffs claim that the viability of these tort claims is independent of whether the plat of Ridge Avenue was extinguished by adverse possession. We disagree. Because the easement created by the plat of Ridge Avenue still exists and is a private easement owned in common by defendants and intervening plaintiffs, we believe the issue of what measures defendants lawfully could take to develop the easement is governed by property law, specifically, the law of common easements.

■ We address first the claim that defendants' construction impermissibly altered certain areas within the right-of-way. (We address below the claim that the construction caused damage outside the right-of-way.) Apparently, no Illinois case since the early twentieth century has had occasion to apply the principles regarding common easements. In *Heuer v. Webster*, 187 Ill. App. 273 (1914), the owner of an easement disputed his co-owner's right to pave the easement as a roadway without his permission. The court first examined the deed in an attempt to ascertain the intended use of the easement. The court construed the deed as contemplating both vehicular and pedestrian use for the easement. The court then addressed whether one owner could pave the easement without the other's permission. Considering the issue one of first impression in Illinois, the court examined the cases of *Rotch v. Livingston*, 91 Me. 461, 40 A. 426 (1898), *Kaatz v. Curtis*, 215 Mass. 311, 102 N.E. 424 (1913), *Atkins v. Bordman*, 43 Mass. 457 (1841), *Newcomer v. Coulsen*, L.R. 5 Ch. Div. 133 (1877), and *Hotchkiss v. Young*, 42 Or. 446, 71 P. 324 (1903). The court drew from these authorities the following rule:

> "It cannot be seriously questioned that such an easement carries with it the right to enter upon any part of the way and improve it in a manner to render it available for its contemplated use, if in so doing there is no unreasonable interference with the co-owner's rights." *Heuer*, 187 Ill. App. at 277-78.

The court also quoted *Rotch* for the following proposition:

> " 'Each owner can *** use the entire width of the way and can fit it all for use at his reasonable discretion so long as he does not unreasonably impede any other co-owner in his use.' " *Heuer*, 187 Ill. App. at 278, quoting *Rotch*, 91 Me. at 475, 40 A. at 432.

The *Heuer* court was not explicit as to what manner of "right" of the co-owner the improvements within an easement intended for vehicular passage must not infringe. We agree with *Rotch* that the protected right is the co-owner's right to use the easement as a vehicular right-of-way. See *Rotch*, 91 Me. at 475, 40 A. at 432. This use, we note, is fundamentally different from using such an easement as a sitting or play area or as a nature preserve. We believe the *Heuer* court was implicitly recognizing this distinction in uses when it observed that the defendant in *Heuer* made no relevant objection to the paving of the easement because he claimed to have been inconvenienced only by "what is naturally incident to [the easement's] rightful use, such as noise from passing vehicles and a less artistic appearance." *Heuer*, 187 Ill. at 277. In our view, the defendant's critical lapse in *Heuer* was in failing to establish that his right to use the right-of-way for *vehicular passage* was infringed by his co-owner's paving of the right-of-way.

■ In the present case, intervening plaintiffs' primary complaint is with the aesthetic damage done by the construction; they claim it has ruined the idyllic nature of the area. This damage, however, was incidental to the development of the easement in accordance with its intended purpose, *i.e.*, to provide vehicular passage. The easement was platted as a roadway; any reasonable landscape alterations involved in developing it as a roadway were permissible. Intervening plaintiffs denounce the devastation of greenery, the partial excavation of a hill, and the creation of an unattractive roadbed running through what once was a park-like setting, but plaintiff presented no evidence at trial that defendants undertook these preliminary developments in an unreasonable or reckless way.

Intervening plaintiffs claim that the culvert across the stream is "unsightly," but they cite no legal authority that the installation of the culvert was an impermissible use of the right-of-way. We have found no Illinois cases addressing the issue, but we agree with other jurisdictions that "[i]f a right-of-way is so located that it crosses a stream ***, the holder of the right-of-way has a right to do such things as are reasonably necessary to maximize use of the right-of-way," which includes bridging the stream "in a way which is reasonably designed to afford efficient use of the right-of-way and which is harmonious with similar structures within the vicinity" (*Dahl v. Rettig*, 32 Colo. App. 87, 91, 506 P.2d 1251, 1253 (1973); see also *Hammond v. Hammond*, 258 Pa. 51, 56, 101 A. 855, 857 (1917)).

■ Intervening plaintiffs' next contention is that the construction had negative effects outside the right-of-way. Ann Trankle and Jean Hirsch, who own cottages adjacent to platted Ridge Avenue, testified that, since the roadway was built up, rainfall has caused sediment

runoff to accumulate on Turner Camp property outside platted Ridge Avenue. Miller and Wilford, who made numerous trips to the site as construction progressed, both testified that adequate measures for siltation control were in place during construction. It is undisputed that silt fencing designed to control siltation was installed along the roadway in April 1997. Plaintiff's expert, civil engineer William Blecke, acknowledged that the proper installation of silt fencing is an acceptable method of sedimentation control and "evidence of good road building practice." Shown pictures of the silt fencing taken in March 1998, Blecke testified the pictures showed appropriate siltation control measures.

Although Hirsch testified that siltation continued even after silt fencing was installed along the road in April 1997, we do not believe this shows that defendants unreasonably used their easement. The owner of an easement is entitled to full enjoyment and every right connected to the enjoyment of the easement but has no right to interfere with the landowner's control and beneficial use of the land further than is necessary for the reasonable enjoyment of his easement. *Schnuck Markets, Inc. v. Soffer*, 213 Ill. App. 3d 957, 974 (1991). A corollary of this rule is that "the owner of a roadway easement may, if reasonably necessary to the exercise of the rights conveyed by [the] grant [of the easement], cut and grade in such a way as to interfere with natural drainage or lateral support on the servient estate" (*Baumbach v. Poole*, 266 Or. 154, 157, 511 P.2d 1219, 1220 (1973)). Hirsch and Trankle offered only vague estimates of the total amount of accumulated silt. We believe, based on the opinions of Miller, Wilford, and Blecke, that defendants took reasonable measures to control siltation and that what siltation occurred was not an impermissible hardship on those owning cottages outside the right-of-way.

Intervening plaintiffs also argue that the construction increased water flow across Turner Camp property outside the right-of-way for Ridge Avenue. Their evidence on this point was indeterminate. Hirsch, Trankle, and other cottage owners claimed that the construction changed water flow patterns. It is undisputed, however, that even before the construction the cottages near the roadway suffered from substantial drainage from the hill that runs across lots 10, 11, and 12 in block two. Defendants presented photographs at trial showing the many ruts in the Swiss parking lot caused by drainage following heavy rainfalls. Plaintiff did not demonstrate at trial how much the water flow increased after the construction. This is crucial because "[t]he question *** is whether the increased flow of surface waters *** was beyond a range consistent with *** reasonableness of use." *Templeton v. Huss*, 57 Ill. 2d 134, 141 (1974). Intervening plaintiffs have not

satisfied us that any increase in water flow that defendants caused was unreasonable.

██ We add some caveats to our holding. The tort counts of plaintiff's complaint concerned the lawfulness of the improvements in platted Ridge Avenue west of the Swiss parking lot that had already occurred at the time of trial. In finding for defendants on those counts, the court rejected plaintiff's arguments that the improvements were unlawful. We uphold that ruling. However, we note that in granting defendant's counterclaim, which asked for a declaration, *inter alia*, that defendants "have the right to improve, develop and maintain Ridge Avenue within the platted right-of-way" and that plaintiff has no authority to hinder "improvement to the subdivision roads within the right of way," the trial court expressly refused to "rule the roads 'public' " or delineate "the extent the defendants can improve within the right-of-way." We take these remarks to mean that the trial court refused to rule on the extent to which defendants can improve platted Ridge Avenue west of the Swiss parking lot beyond what had already been done at the time of trial. Also, because the improvements on Ridge Avenue west of the Swiss parking lot were the only subjects of the tort claims, the trial court did not have occasion to rule on the lawfulness of any other improvements that were in existence or contemplated at the time of trial, whether on Ridge Avenue or any other platted road in the Kerns subdivision. Additionally, we construe the trial court's qualifications to its ruling on defendants' counterclaim as a refusal to rule on the lawfulness of any particular *future* improvement, whether of Ridge Avenue or any other platted road in the Kerns subdivision. Future improvements on any of the platted roadways will, of course, be subject to local, state, and federal standards. Defendants have not appealed the trial court's qualified ruling on their counterclaim. Therefore, that ruling stands.

For the reasons provided above, we affirm the judgment of the circuit court of McHenry County.

Affirmed.

KAPALA and GROMETER, JJ., concur.

APPENDIX