No. 2-09-0249      Filed: 5-17-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| LELAND STAHELIN and JES VENTURES, L.L.C., | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 05--MR--1426 |
| FOREST PRESERVE DISTRICT OF DU PAGE COUNTY, | ) ) ) ) | |
| Defendant | ) ) | Honorable Bonnie M. Wheaton, |
| (Morton Arboretum, Defendant-Appellee). | ) | Judge, Presiding. |

JUSTICE BURKE delivered the opinion of the court:

The circuit court of Du Page County awarded defendant, Morton Arboretum (Morton), $94,578 in attorney fees, pursuant to section 1988 of the Civil Rights Act of 1991 (Act) (42 U.S.C. §1988 (2000)), finding that plaintiffs, Leland Stahelin and JES Ventures, L.L.C., frivolously appealed to this court and the Illinois Supreme Court the trial court's dismissal of their action against Morton. On appeal, plaintiffs argue that the trial court lacked the authority to award the fees, because Morton failed to seek them directly in this court pursuant to Supreme Court Rule 375(b) (155 Ill. 2d R. 375(b)), and because the trial court allowed Morton to file a supplemental motion for fees before we issued a mandate on the merits. Plaintiffs also maintain that the trial court abused

its discretion (a) in determining that plaintiffs' action against Morton was frivolous under section 1988 and (b) in determining the amount of the fees. We affirm.

BACKGROUND

The Initial Complaint

The specific facts of the history of this case are set forth in Stahelin v. Forest Preserve District, 376 Ill. App. 3d 765, 767-70 (2007)). We briefly set forth those facts that are relevant to this appeal. Plaintiffs, owners of an 18-acre parcel of land bordered on three sides by Morton, desired to develop their property. Morton and the Forest Preserve District of Du Page County (hereinafter the District) both desired to preserve plaintiffs' property in its current state, for the benefit of the public. The District entered into negotiations with plaintiffs to buy their property. The negotiations were authorized by an enabling ordinance (Phase I ordinance). However, good-faith negotiations fell apart. The District enacted another ordinance (Phase II ordinance), authorizing acquisition of the property through negotiation or condemnation. On the date the Phase II ordinance was enacted, the District filed a suit for condemnation, which it later voluntarily dismissed. The District enacted a third ordinance (Abandonment ordinance), which authorized the voluntary dismissal and stated that, although it continued "to believe the fee simple acquisition of the property is important and necessary for the furtherance of the purposes set forth in this Ordinance, the [District] has determined that at this time, it is in the best interest of the [District] to abandon the acquisition of the property and dismiss the condemnation proceedings currently pending." The Abandonment ordinance further provided that the District "hereby expressly states that the acquisition of the property in the future would be important to furthering the statutory purposes of the [District]."

Plaintiffs did not make any improvements to the land, such as a subdivision development, "fearing" the purposes set forth in the Abandonment ordinance, and they requested that the District delete that language from the ordinance. The District refused to do so.

Subsequently, plaintiffs filed a multicount complaint against the District and Morton. Only count II of plaintiffs' complaint, which was brought against Morton, is at issue in the present appeal. Plaintiffs alleged in count II that Morton was liable under section 1983 of the Act (42 U.S.C. §1983 (2000)) for an alleged conspiracy between Morton and the District to "take" plaintiffs' property in violation of the fifth amendment to the United States Constitution. The other counts sought inverse condemnation and the issuance of a writ of mandamus to initiate condemnation proceedings, a declaration that certain ordinances approved by the District were ultra vires acts, and an elimination of the cloud on plaintiffs' title to the property. The District and Morton filed motions to dismiss, pursuant to sections 2--615 and 2--619 of the Code of Civil Procedure (Code) (735 ILCS 5/2--615, 2--619 (West 2006)), and the trial court dismissed the complaint.

The Initial Appeal

We affirmed the trial court's order in all respects. Stahelin, 376 Ill. App. 3d at 780. We held that the Abandonment ordinance did not amount to a regulatory taking of plaintiffs' property; the language did not give the District any power to regulate, limit, or control plaintiffs' ability to use their land or develop their property. We further held that, "[d]espite [plaintiffs'] apparent apprehension about the language, the fact remains that the ordinance provides the District no enforcement mechanism to regulate plaintiffs' property." Stahelin, 376 Ill. App. 3d at 774. We also pointed out that, although at some future time a municipal corporation, with powers of eminent domain, may require the land of a private owner, it is one of the conditions under which the owner holds the land,

and entering a petition to condemn or passing resolutions or ordinances vests no interest in the land. Stahelin, 376 Ill. App. 3d at 775.

As to count II's alleged constitutional deprivation of property rights, we concluded that plaintiffs alleged the type of governmental petitioning that is protected by the first amendment and that it was the District's right to listen to Morton's petition because it is within the District's statutory authority to exercise eminent domain. Stahelin, 376 Ill. App. 3d at 777.

We found that the Abandonment ordinance and the Phase I ordinance were not outside the broad grant of implied powers vested with the District's board and that, thus, neither ordinance was ultra vires. Stahelin, 376 Ill. App. 3d at 778-79. Finally, we held that the Phase I ordinance was inoperative and could not constitute a semblance of title or an adverse claim and that the Abandonment ordinance did not assert that the District had any right or claim to the property. We found that neither ordinance had the legal effect that plaintiffs ascribed to it. Stahelin, 376 Ill. App. 3d at 780. In short, we concluded that if plaintiffs obtained the proper permits, they could "begin bulldozing trees on their property at any time and the District would be powerless to stop them based on either of the ordinances." Stahelin, 376 Ill. App. 3d at 780.

The Section 1988 Fee Award

Morton filed a motion for attorney fees pursuant to section 1988 following the trial court's dismissal of count II but before plaintiffs filed the initial appeal. Section 1988 provides a court discretion to award a prevailing defendant in a section 1983 action its reasonable attorney fees upon a "finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Hughes v. Rowe, 449 U.S. 5, 14, 66 L. Ed. 2d 163, 172, 101 S. Ct. 173, 178 (1980), citing Christiansburg Garment Co. v. Equal Employment Opportunity

Comm'n, 434 U.S. 412, 421, 54 L. Ed. 2d 648, 657, 98 S. Ct. 694, 700 (1978).  Morton argued that plaintiffs' claim was "doomed" for at least three independent legal reasons, each readily identifiable from controlling legal precedent, and that therefore the action should be deemed frivolous.  Plaintiffs filed their notice of appeal and requested that the proceedings on the fee motion be stayed pending the resolution of the appeal.  Morton did not object and the trial court agreed to grant the stay.

After we affirmed the trial court's decision to dismiss plaintiffs' complaint, Morton sought leave to supplement its fee motion to include the failed appeal.  However, the fee proceedings were stayed again while plaintiffs pursued a petition for leave to appeal to the Illinois Supreme Court.  Following the rejection of plaintiffs' appeal by the supreme court, the trial court allowed Morton to supplement its fee motion to include additional law and facts.  Morton's motion focused on plaintiffs' decision to continue bringing appeals after the trial court's dismissal order set forth the legal defects in their claim against Morton.

The trial court awarded attorney fees to Morton.  However, it awarded fees only from the appellate proceedings and not from the inception of plaintiffs' case.  The trial court gave plaintiffs the benefit of the doubt as to the filing of the initial complaint and denied those fees requested for defending the trial proceedings, finding that the law was made clear "in the [motion-to-dismiss] briefs so that I can only conclude that the appeal not only to the Appellate Court but to the Supreme Court was without legal foundation and has to be deemed frivolous."  In the final hearing on the motion for fees, the trial judge further commented:

> "This started out as a 1983 action.  The petition for fees is not being brought by a
> governmental entity which was named as a defendant.  The petition for fees is being brought

or was brought and is now being defended by a presumably not-for-profit entity which was dragged into this and what I previously found to be a frivolous piece of litigation."

Following the award of fees, plaintiffs timely appeal.

ANALYSIS

Section 1988 Fees

We first address plaintiffs' argument that the trial court abused its discretion in finding that plaintiffs' filing appeals following the dismissal of the action against Morton was frivolous within the meaning of section 1988. Morton contends that the claim was frivolous from the start for at least three independent reasons, but by the time the motion-to-dismiss briefing was complete, there could be no dispute that the action was frivolous, and it was certainly within the trial court's discretion to award fees incurred from that point. We address this argument first because our conclusion obviates the need to consider plaintiffs' remaining arguments.

We commence with a review of the applicable statute and case law. As plaintiffs proceeded against Morton in a section 1983 action, section 1988 governs the award of attorney fees. Section 1988 provides, in relevant part:

"In any action or proceeding to enforce a provision of section[ ] *** 1983 *** of this title, *** the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ***." 42 U.S.C. §1988(b) (2000).

Courts have interpreted this statute to allow for an award of attorney fees as part of an award of costs to a prevailing defendant only where a plaintiff's claim was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Christiansburg, 434 U.S. at 421, 54 L. Ed. 2d at 657, 98 S. Ct. at 700 (addressing Title VII's fee-shifting provision); Doe v. Busbee, 684

F.2d 1375, 1378-79 (11th Cir. 1982). Generally speaking, the "plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christiansburg, 434 U.S. at 422, 54 L. Ed. 2d at 657, 98 S. Ct. at 701. The Supreme Court has specifically applied this standard in civil rights actions brought pursuant to section 1983. Hughes, 449 U.S. at 14, 66 L. Ed. 2d at 172, 101 S. Ct. at 178). The purpose of allowing attorney fees to defendants in all of these contexts is to protect defendants from burdensome litigation having no legal or factual basis. Christiansburg, 434 U.S. at 420, 54 L. Ed. 2d at 656, 98 S. Ct. at 700.

A suit is "frivolous" when it "has no reasonable basis, whether in fact or law." Tarkowski v. County of Lake, 775 F.2d 173, 176 (7th Cir. 1985). Whether a plaintiff ultimately loses his case is not in itself a sufficient justification for the assessment of fees. Hughes, 449 U.S. at 14, 66 L. Ed. 2d at 172, 101 S. Ct. at 178. Whether a plaintiff's claim is frivolous, unreasonable, or groundless must be judged by an objective standard, although if the court finds that a plaintiff has brought or continued a claim in bad faith, a stronger basis exists for charging the plaintiff with the attorney fees incurred by the defendant. Christiansburg, 434 U.S. at 422, 54 L. Ed. 2d at 657, 98 S. Ct. at 701; Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1176-80 (11th Cir. 2005). In this circumstance, the court should " 'focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful.' " Sullivan v. School Board, 773 F.2d 1182, 1189 (11th Cir. 1985), quoting Jones v. Texas Tech University, 656 F.2d 1137, 1145 (5th Cir. 1981). In the context of a Title VII case, to which the same standard applies, the Supreme Court has cautioned that, in considering whether a plaintiff's claim is frivolous, unreasonable, or groundless:

"[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." Christiansburg, 434 U.S. at 421-22, 54 L. Ed. 2d at 657, 98 S. Ct. at 700-01.

Plaintiffs point out that, under Seventh Circuit precedent, once a plaintiff files a claim that is not then frivolous, that claim can become frivolous thereafter only when it should be clear to the plaintiff, in light of a failure to uncover necessary facts, that further efforts will not produce sufficient evidence to warrant a trial. Hermes v. Hein, 742 F.2d 350, 358 (7th Cir. 1984). Plaintiffs state that the Seventh Circuit has identified the following four factors to determine if a claim was frivolous when filed: (1) whether the issue is one of first impression requiring judicial resolution; (2) whether the controversy is sufficiently based upon a real threat of injury to the plaintiff; (3) whether the trial court decided that the suit was frivolous under the Christiansburg guidelines; and (4) whether the record supports that decision. Reichenberger v. Pritchard, 660 F.2d 280, 288 (7th Cir. 1981). The Seventh Circuit also requires the trial court, in order to provide a basis for appellate review, to discuss the specific information that forms the basis of the plaintiff's suit and to explain

why this information does not constitute adequate factual substance for a nonfrivolous suit. Hermes, 742 F.2d at 357.

Plaintiffs further argue that here the trial court's analysis was backwards and assert that, if the complaint was not frivolous when filed, then plaintiffs had the absolute right to seek this court's review of its dismissal. Ergo, if they had an absolute right to the review, plaintiffs presume, then it cannot be said that they acted frivolously when exercising that absolute right. Plaintiffs point out that the record lacks any evidence that during the case plaintiffs learned of any inaccuracies in their factual allegations, which Morton conceded by filing its motion to dismiss. Plaintiffs also assert that we chose to publish our ruling because it addressed a matter of first impression requiring judicial resolution and therefore the complaint "probably" cannot be deemed frivolous. Plaintiffs observe that even the tone of our opinion supports this conclusion, as it fails to state that their contention was "without merit."

Given that the case had a reasonable basis in fact when it was filed, the trial court reasonably concluded that plaintiffs' claim against Morton was not frivolous at the outset. We do not find that the trial court abused its discretion in giving plaintiffs the benefit of the doubt as to the initial filing of the complaint. However, when the briefs were submitted and argued on Morton's motion to dismiss, the legal shortcomings of plaintiffs' case revealed that continuing the case against Morton was fruitless and " 'so lacking in arguable merit as to be groundless or without foundation' " by section 1983 standards. Sullivan, 773 F.2d at 1189, quoting Jones, 656 F.2d at 1145.

Plaintiffs alleged in count II that, pursuant to section 1983, its substantive due process rights were violated as a result of an alleged conspiracy between Morton and the District to use the District's power of eminent domain to deprive plaintiffs of their property rights. Morton filed a

motion to dismiss, pursuant to section 2--619(a)(9) of the Code (735 ILCS 5/2--619(a)(9) (West 2006)), arguing that Morton's action of petitioning the District was privileged under the first amendment and the Noerr-Pennington doctrine (see Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 5 L. Ed. 2d 464, 81 S. Ct. 523 (1961); United Mine Workers v. Pennington, 381 U.S. 657, 14 L. Ed. 2d 626, 85 S. Ct. 1585 (1965)).[1] Under section 2--619, a party admits all well-pleaded facts and admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the claim. T&S Signs, Inc. v. Village of Wadsworth, 261 Ill. App. 3d 1080, 1083 (1994).

During briefing on the matter, plaintiffs conceded that Morton's action generally was entitled to protection under the first amendment and the Noerr-Pennington doctrine but argued that Morton and the District's conspiratorial conduct fell within the very narrow "sham" exception to Noerr-Pennington immunity. Following argument, the trial court dismissed the claim, finding that under the first amendment Morton had the right to petition the government and that there was no conspiracy to commit an unlawful act where Morton was within its rights to petition the District and the District was "charged with the obligation to listen to its constituents."

We stated that the Noerr-Pennington doctrine, which has been extended to section 1983 actions and to local governmental bodies, is subject to a "sham" exception when the petition is

---

[1]Morton also filed a motion to dismiss count II under section 2--615 (735 ILCS 5/2--615 (West 2006)), on the ground that count II failed to properly state a claim for relief under section 1983 because plaintiffs did not sufficiently allege that Morton acted under color of state law and did not exhaust state remedies. The trial court dismissed count II on both section 2--615 and section 2--619 grounds. We affirmed the trial court's section 2--619 dismissal.

" 'objectively baseless in the sense that no reasonable [petitioner] could realistically expect success on the merits.' " Stahelin, 376 Ill. App. 3d at 776, quoting Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60, 123 L. Ed. 2d 611, 624, 113 S. Ct. 1920, 1928 (1993). The sham exception to the Noerr-Pennington doctrine applies only when a defendant petitions the government with no realistic expectation of a favorable result, but merely to force expense and delay on the other party. Filing a frivolous objection to a competitor's license application, with no expectation of achieving denial of the license but simply to impose expense and delay, is one example. Stahelin, 376 Ill. App. 3d at 776, citing City of Columbia v. Omni Outdoor Advertising, Inc., 449 U.S. 365, 380, 113 L. Ed. 2d 382, 398, 111 S. Ct. 1344, 1354 (1991).

Plaintiffs specifically alleged that Morton petitioned the District to acquire the property for Morton's private benefit and to then transfer the property to Morton for management; that Morton suggested to the District that it use its condemnation power to have Morton undertake possession and management; that Morton met with representatives of the District to discuss having the District use its condemnation power with the intent that the District would ultimately have the property transferred to Morton; and that the purpose of the condemnation action was to have the property turned over to Morton. Plaintiffs asserted that the District ultimately filed the complaint for condemnation at Morton's urging and for Morton's benefit and that it ultimately served Morton's goal of stalling and preventing the proposed development of the property. Plaintiffs also asserted that the voluntary dismissal of the suit served as evidence that neither Morton nor the District ever truly desired to physically acquire the property but that they conspired to forever preclude development of the property and to harm and harass plaintiffs by forcing them to sell the property to the District or by destroying the developmental potential of the property.

As the trial court held, and as we explained in our opinion, the allegations, even taken as true, could never amount to a sham exception because they merely described an activity that Morton legally was entitled to pursue under the Noerr-Pennington doctrine. Stahelin, 376 Ill. App. 3d at 777. Alleging that Morton petitioned the District either to acquire the property for Morton or to preclude development of the property was just another way of depicting Morton's attempt to preserve open space, which necessarily involved preventing development. Further, the District's alleged conspiracy to exercise eminent domain to acquire the property could never amount to a sham exception, because it was not only Morton's right to petition the District to exercise eminent domain but it was also the District's right to listen to Morton's petition, as it is within the District's statutory authority to exercise eminent domain. Stahelin, 376 Ill. App. 3d at 777. Finally, we pointed out:

"[P]laintiffs did not, and cannot, allege that the District's condemnation proceeding was 'objectively baseless,' because, as plaintiffs acknowledge: the District has 'powers of eminent domain to acquire involuntarily real estate within Du Page County for forest preserve purposes.' Thus, the District had a realistic expectation of succeeding in its condemnation action, thereby rendering the 'sham' exception inapplicable. Because of the District's statutory right to condemn property, there was substantial likelihood of the District succeeding on the merits in its condemnation action. Thus, Morton was protected by the Noerr-Pennington doctrine to petition the District, and the doctrine reciprocally protects the District, which had a right to act on the petition of its constituent." Stahelin, 376 Ill. App. 3d at 777.

In Brown v. City of Palmetto, Georgia, 681 F.2d 1325 (11th Cir. 1982), the plaintiff filed a section 1983 suit against the city, an insurance company, and a number of individual defendants,

seeking to recover for the demolition of a fire-damaged building. The plaintiff alleged that the defendants conspired to remove the building to lessen the insurance company's liability and to benefit the city, in violation of his due process and equal protection rights. The district court granted a directed verdict for the defendants because the plaintiff offered no evidence at trial to prove that a conspiracy existed. Brown, 681 F.2d at 1326. After the plaintiff's unsuccessful appeal, the defendants filed a motion for an award of attorney fees, and the district court denied the motion on the grounds that the motion was filed too late and that it was not clear until the directed verdict was entered that the plaintiff's case was frivolous. Brown, 681 F.2d at 1326.

On appeal, the defendants argued that the case was frivolous from the outset and that the district court's holding was erroneous because there is no jurisdictional time limit for filing a motion under section 1988. The appellate court found that the motion for attorney fees was timely filed. Brown, 681 F.2d at 1327. As to the award of attorney fees, the appellate court noted that the district court held that the plaintiff's case was weak from the beginning but that it was not apparent until the close of the evidence that the case was frivolous. Although the appellate court was puzzled by the suggestion that a case that was clearly frivolous at the close of the evidence could have been anything else at the beginning, it concluded that the defendants had failed to show that it was an abuse of discretion to deny attorney fees incurred at the district court level. The appellate court further observed, however, that the district court also found that the plaintiff continued to litigate after it became clear that his case was frivolous. The appellate court therefore held that the denial of attorney fees with respect to the appeal was an abuse of discretion and remanded for computation of fees incurred after the district court directed a verdict for the defendants. Brown, 681 F.2d at 1327.

While, as plaintiffs argue, they have an absolute right to an appeal, they do so at their peril if the appeal is frivolous, unreasonable, or groundless. Moreover, although it is true that plaintiffs' allegations of fact were never challenged, the problem with this argument is that such a challenge would have been meaningless in this case. We were never asked to decide in the initial appeal if the case was frivolous and that we failed to state so in our decision and that we published it makes no difference. Plaintiffs had no reasonable expectation of succeeding on count II against Morton and yet they continued to litigate it to this court and to the supreme court. Pursuing appeals after it is clear that doing so would be fruitless subjects a plaintiff to liability for appellate attorney fees pursuant to section 1988. We conclude that the trial court did not abuse its discretion in finding that the case was clearly frivolous after the motion-to-dismiss briefing and in awarding attorney fees incurred for defending the baseless appeals.

Supreme Court Rule 375

Having found that the trial court did not abuse its discretion in awarding attorney fees for defending the frivolous appeals, we next address plaintiffs' argument that Morton's failure to seek the fees directly in the appellate court, pursuant to Supreme Court Rule 375(b) (155 Ill. 2d R. 375(b)), left the trial court without the authority to award such fees. Plaintiffs maintain that the trial court lacked the authority to award any fees associated with the appellate proceedings in the first instance because the only avenue available to seek appellate fees was to file a motion in the appellate court pursuant to Rule 375, which Morton did not do. Plaintiffs essentially argue that Rule 375 effectively preempts federal law, which leaves Illinois circuit courts powerless to utilize section 1988.

Plaintiffs first raised this preemption argument in their motion for reconsideration of the trial court's fee award. Arguments raised for the first time in a motion for reconsideration are forfeited on appeal. See Rodgers-Orduno v. Cecil-Genter, 312 Ill. App. 3d 1150, 1154 (2000) (argument on appeal forfeited where movant mentioned the issue for the first time in the motion for reconsideration). Plaintiffs had a year in which they could have raised the issue, from when Morton filed its initial motion for fees to the trial court's decision. As pointed out by Morton, plaintiffs' preemption argument should have been timely presented in order to preserve it for appeal. See Haudrich v. Howmedica, Inc., 169 Ill. 2d 525, 539 (1996).

Plaintiffs argue that Morton "opened the door and allowed [plaintiffs] to preserve the [preemption] issue" when Morton filed a supplemental motion for fees. We reject this argument. The supplemental fee motion was filed after the trial court had denied plaintiffs' motion to reconsider and at the invitation of the trial court. We find that plaintiffs have forfeited their argument by failing to timely raise it before the trial court.

Even if we had found no forfeiture, plaintiffs' argument lacks merit. While it is true that Rule 375 does provide a path for the award of attorney fees associated with defending against a frivolous appeal, it is not the only route, and the failure to file a motion under Rule 375 does not preclude a section 1988 motion. Section 1988 provides another mechanism for fee-shifting where a litigation matter is deemed frivolous, and it applies to all phases of litigation, at the trial and appellate levels. In applying section 1988, the Supreme Court "favors treating a case as an inclusive whole." Commissioner, Immigration & Naturalization Service v. Jean, 496 U.S. 154, 161-62, 110 L. Ed. 2d 134, 144, 110 S. Ct. 2316, 2320 (1990) (holding that district court has the power to award appellate fees under fee-shifting statute). Many cases have found that the trial court, with its greater facility

for evidentiary hearings and fact-finding, should award fees for appellate services to a litigant entitled to fees under section 1988, despite that appellate courts routinely have their own rules for seeking attorney fees, similar to Rule 375. See, e.g., Ekanem v. Health & Hospital Corp. of Marion County, Indiana, 778 F.2d 1254, 1257 (7th Cir. 1985) (petition on entitlement to appellate attorney fees may be filed in either district court or court of appeals); Northcross v. Board of Education of Memphis City Schools, 611 F.2d 624, 637 (6th Cir. 1979) (services relating to various appeals are compensable, and district court, with its greater facility for evidentiary hearings and fact-finding, should make awards for appellate services in first instance, subject to appellate review).

Plaintiffs cite Alexander v. Human Rights Comm'n, 166 Ill. App. 3d 515 (1988), in support of their position that appellate attorney fees cannot be sought in the trial court. In Alexander, the Illinois Human Rights Commission denied the complainant's request for attorney fees pursuant to the Illinois Human Rights Act for legal representation in an administrative review action before the circuit court of Cook County. The appellate court held that the Illinois Human Rights Act did not expressly permit awards for costs of appellate representation. Alexander, 166 Ill. App. 3d at 518. When the complainant urged on appeal that his claim be analogized to section 1988 claims for attorney fees in appeals in discrimination suits brought under Title VII for employment discrimination, the court declined, finding that it had no authority to add language to the Illinois Human Rights Act or otherwise construe it to interject provisions not found therein, however desirable or beneficial the outcome. Alexander, 166 Ill. App. 3d at 518. Alexander did not involve a litigant's right to seek section 1988 fees in a section 1983 case, as is the case here, where the trial court had the authority to award appellate fees under section 1988. Alexander does not help plaintiffs' position.

Motion to Supplement Fees Prior to Mandate on Appeal

We next address plaintiffs' contention that the trial court lacked the authority to award Morton attorney fees when the trial court allowed Morton to file its supplemental motion for fees before this court issued a mandate on the merits. This assumes that Morton's motion for fees was legally tied to the trial court's final judgment on the merits. However, a motion for fees under section 1988 is collateral to a final judgment on the merits and is unaffected by an appeal of that judgment. See, e.g., White v. New Hampshire Department of Employment Security, 455 U.S. 445, 451-52, 71 L. Ed. 2d 325, 331, 102 S. Ct. 1162, 1166 (1982) (fee awards under section 1988 "require an inquiry separate from the decision on the merits"); In re Estate of Kunsch, 342 Ill. App. 3d 552, 555-59 (2003) (a collateral motion for costs did not affect final judgment, for jurisdictional purposes). Accordingly, plaintiffs' subsequent appeals on the merits were separate from Morton's motion for fees and did not deprive the trial court of jurisdiction to resolve the fee issue.

Plaintiffs' reliance on Bank of Viola v. Nestrick, 94 Ill. App. 3d 511 (1981), is ineffectual. In Viola, the trial court made substantive decisions while the appellate court was considering a timely appeal and had jurisdiction over the case. Viola, 94 Ill. App. 3d at 513-14. In this case, the fee decision and the judgment on the merits are treated as separate. See McCarter v. Retirement Plan For District Managers of American Family Insurance Group, 540 F.3d 649, 652 (7th Cir. 2008). Unlike in Viola, we never had jurisdiction over Morton's motion for fees, which remained exclusively within the trial court.

The Amount of the Fee Award

We last address plaintiffs' argument that the trial court abused its discretion in determining the amount of fees awarded to Morton. Plaintiffs' claim concerns the assessment of the hourly rate and the hours expended on the case.

"In assessing such a claim, reviewing courts recognize that this is a factual determination that is usually given great deference since it depends heavily on the trial court's greater familiarity with the case." Demitro v. General Motors Acceptance Corp., 388 Ill. App. 3d 15, 24 (2009). Determining an award under section 1988 calls for the court to apply the "lodestar" method, where "reasonable hourly rates" are "multiplied by hours reasonably expended." People Who Care v. Rockford Board of Education, 90 F.3d 1307, 1310 (7th Cir. 1996). This is what the trial court did in this case.

As to the hourly rates, Morton voluntarily made substantial reductions, limiting its request to the hourly rate that its counsel charged when the case began in 2005 rather than the rate counsel charged when the fee motion was filed. Judge Wheaton, who relied upon her "20 year career," ruled that Morton's "discounted rates" were "not unreasonable" in light of what is "reasonable and customary in Du Page County." Plaintiffs offer no contrary evidence to challenge this finding.

Regarding the amount of hours spent defending, Morton submitted documentation detailing the activities of its counsel and again made significant concessions with respect to the hours it claimed, eliminating a number of hours and seeking recovery only for the efforts of the two principal counsel who worked on the matter, even though several others contributed. Judge Wheaton found that the entries submitted were for work that was actually performed and, after disallowing certain entries relating to travel, she approved the rest as reasonable. We do not find that the trial court abused its discretion in awarding $94,578 in attorney fees to Morton.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

O'MALLEY and SCHOSTOK, JJ., concur.